UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNIE B. HARTHUN,

    Plaintiff,

v.                                                 Case No. 1:07-cv-595
                                                 Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on October 15, 1958 and has completed one year of college (AR 53, 80).[1] She alleges a disability onset date of July 18, 1998 (AR 53). Plaintiff had previous employment as an eligibility specialist (state welfare office), unemployment claims worker (state employment office), realtor and administrative assistant (AR 83). Plaintiff identified her disabling conditions as follows:

> [S]peech and coordination deficits, partial nerve impairment on left back, memory loss, TIA/hole in heart, stress, depression, [anxiety], headaches, numbness in left side, acid [reflux], confusion, difficulty with daily decisions, difficulty sorting thoughts, frustration, [back] problems[.] I have [a] struggle every day keeping my thoughts clear. One thing at a time. Just getting ready for the day is very slow, I cannot handle interruptions. I am frustrated easily. I tire quickly. [C]annot remember

---

[1] Citations to the administrative record will be referenced as (AR "page #").

> simple tasks. Hard to explain. Use to do several tasks, struggle to clearly think about one thing. Have periods of complete memory loss in middle of things. Constant ache on left side, fear, anxiety, fatigue, headaches, sleeplessness. Depression, uselessness. TIA, hole in heart, stress, numbness[,] pain [,] memory loss[.]

(AR 71). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 6, 2006 (AR 18-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

3

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since July 18, 1998, the alleged onset date of her disability, and met the insured status for DIB through March 31, 2004 (AR 20). Second, the ALJ found that she suffered severe impairments consisting of depression disorder and anxiety disorder (AR 20). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform work with occasional contact with the public, co-workers and supervisors; and limited to 1-2 step tasks" (AR 23). The ALJ found that plaintiff could not perform any of her past relevant work (AR 24-25). In addition, the ALJ found that plaintiff was "not persuasive" and her subjective complaints "not entirely credible" (AR 23). In evaluating plaintiff's credibility, the ALJ noted that "[h]er assertions and dramatic behavior at the hearing are not supported by the objective

medical record" and that "claimant and her attorney brushed off the fact she was in jail for felony embezzlement" (AR 23).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform the following work in the regional economy: cleaner/janitor (20,000 jobs at medium exertion and 10,000 jobs at light exertion); and, office helper (5,000 jobs at sedentary exertion) (AR 25). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 26).

## III.  ANALYSIS

Plaintiff's brief did not include a "Statement of Errors" as required by the September 13, 2007 order directing filing of briefs. Nevertheless, the court has gleaned the following issue from plaintiff's "argument":

> **The ALJ failed to apply or erroneously applied the requirements of 20 C.F.R. § 404.1527 in evaluating the opinion evidence.**

In this appeal, plaintiff contends that the ALJ erred in evaluating the opinions of her treating physician Geoffrey Turner, M.D., her treating nurse practitioner Ellen N. Herring (NP Herring) and her mental health counselor Barbara Mansfield. The ALJ did not rely on the opinions expressed by these three sources, but apparently based her decision upon the mental RFC assessment prepared by the state disability physician, Robert L. Newhouse, M.D.[2]

The agency regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of you impairment(s), including your symptoms, diagnosis and prognosis, what you can still

---

[2] The ALJ did not explicitly address Dr. Newhouse's opinions. However, the ALJ's RFC was consistent with the doctor's conclusion that plaintiff retained the ability to perform simple tasks on a sustained basis (AR 23, 268).

do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An "acceptable medical source" is defined as licensed physicians (medical or osteopathic), licensed or certified psychologists, licensed optometrists (for measurement of visual acuity), licensed podiatrists (for purposes of establishing impairments of the foot and ankle), and qualified speech-language pathologists (for purposes of establishing speech or language impairments). *Id.* at § 404.1513(a). The Commissioner may also use evidence from "other sources" to show the severity of a claimant's impairments. *Id.* at § 404.1513(d). "Other sources" include medical sources not listed in § 1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists. *Id.* at § 404.1513(d)(1). The regulations require the Commissioner to evaluate every medical opinion he receives, "[r]egardless of the source." *Id.* at § 404.1527(d). In this case, Dr. Turner, plaintiff's treating physician, is considered an "acceptable medical source," while NP Herring and Ms. Mansfield are considered "other sources." *See id.* at § 404.1513(a), (d).

### A.     Dr. Turner's reports from 1996 and 1998

A claimant's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating the claimant's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The regulations provide that if the Commissioner will give controlling weight to a treating, acceptable medical source's opinion on the issues of the nature and severity of a claimant's impairments, if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Walters*, 127 F.3d at 530, *quoting* § 404.1527(d)(2). In other words, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); § 404.1527. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating physician. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); § 404.1527(d)(2).

Dr. Turner prepared a report dated July 26, 1996, which stated as follows:

> [Plaintiff] is my patient.  She currently has depression and severe anxiety disorder.  She has a fairly good prognosis and I feel that allowing her to work in Manistee as opposed to Traverse City would benefit her condition, due to the long drive to Traverse City.
>
> [Plaintiff] has had multiple episodes of falling asleep at the wheel and I think that she is putting herself in significant danger continuing to work under those conditions.

(AR 166).  Approximately two years later, on June 30, 1998, the doctor issued a note stating:

> [Plaintiff] is to be on a medical leave for 6 months to recover.  DX (diagnosis) Transient Ischemic Attacks prognosis good with possible surgery within 1 year may be able to start part time in 4 months[.]

(AR 164).

The ALJ did not give these opinions much weight because "some documents were not signed," the 1996 report stated conclusions based on plaintiff's assertions and did not specify how the stress affected her, and the 1998 medical restriction was limited to six months (AR 24).

7

The ALJ did not specify which documents were not signed. This was not helpful, since it appears that both the report and the note were signed. Nevertheless, the ALJ articulated sufficient reasons for discounting the weight of these opinions. Even if the ALJ had given these opinions controlling weight, they do not establish that plaintiff was disabled. Both opinions pre-date the alleged disability onset date and neither opinion suggests that plaintiff was unable to perform work related activities for a continuous period of not less than twelve months. On the contrary, both opinions indicate that plaintiff would be able to continue working.

### B. Ms. Mansfield and NP Herring

In February 2005, Ms. Mansfield, who identified herself as plaintiff's therapist at Manistee County Community Mental Health, wrote a letter to the Manistee Circuit Court judge requesting a lenient sentence for plaintiff in her criminal matter (AR 271). Ms. Mansfield advised the court that plaintiff had been involved in outpatient counseling since August 2004, and suffered from anxiety, panic disorder, a pervasively depressed mood, and past suicidal preoccupation (AR 271). Ms. Mansfield also noted that plaintiff was the primary caretaker for her two grandchildren and characterized her as a conscientious mother and grandmother who devotes a great deal of time and attention to the needs of her children and grandchildren (AR 271). The ALJ gave this report no weight because it was not completed by a medical doctor and appeared to be based on plaintiff's subjective complaints (AR 24).

NP Herring treated plaintiff as a primary caregiver at the Crystal Lake Health Center from 2002 through 2004 (AR 215-26).[3] In January 2004, NP Herring wrote an open letter stating that plaintiff had been treated for anxiety, depression and heart problems; that she is experiencing

---

[3] NP Herring may have treated plaintiff prior to 2002. However, the handwriting and signatures on earlier records are illegible.

major depression; that she is not able to hold a job due to these conditions; that "even with medication she has difficulty with the simplest decisions;" that she is unable to sleep; and that her worries and anxiety make it difficult for her to concentrate on daily living activities (AR 215). The ALJ gave no weight to this statement because "it was not signed by a medical doctor" (AR 24).

In addition, NP Herring completed a mental RFC questionnaire in July 2006, in which she opined that plaintiff suffered from major depression and anxiety, which made her unable to complete tasks and to concentrate, and hindered her ability to think through problems (AR 359). NP Herring also stated: that plaintiff's memory, understanding, attention and attendance would be greatly impaired by anxiety in work situations; that plaintiff is unable to handle stress which "causes her to shut down mentally;" and that plaintiff has panic attacks in "public situations" (AR 361-63). Plaintiff contends that NP Herring's RFC assessment is consistent with the opinions of DDS consultative examiner Lynn McAndrews, Ph.D., who stated that plaintiff "does not appear to be exaggerating her symptoms, but has a tendency to minimize them" (AR 247) and assigned plaintiff a Global Assessment of Functioning (GAF) score of 44.[4]  The ALJ rejected NP Herring's RFC assessment because it was not given by a psychiatrist, mental health specialist or medical doctor, and appeared based on plaintiff's subjective complaints (AR 24).

---

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*  Here, the assigned GAF score of 44 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*.

Neither Ms. Mansfield nor NP Herring is an "acceptable medical source" under § 404.1513(a). While their opinions can be considered as evidence from an "other source," such opinions are not entitled the weight given to the medical opinion of an "acceptable medical source" (e.g., a medical doctor). *See* §§ 404.1513(d)(1); 404.1527(s)(2). As the Sixth Circuit explained in *Walters*, the opinion of an "other" medical source (in that case a chiropractor) is not entitled to controlling weight:

> [L]ogic and the plain language of the regulations suggest that a treating source under 20 C.F.R. § 404.1527(d)(2) must be a medical source and that a chiropractor is not a medical source. The controlling weight provision is found under a section heading that refers specifically to medical opinions, and in the regulations chiropractor opinions are not listed as one of the five types of "acceptable medical sources" but are instead listed under the separate heading of "other [non-medical] sources." Compare 20 C.F.R. § 404.1513(a) (1997) with 20 C.F.R. § 404.1513(e) (1997). We, therefore, must agree with the Second Circuit's conclusion that under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source.

*Walters*, 127 F.3d at 530.

The Commissioner recently clarified the evaluation of opinions from sources that are not "acceptable medical sources" in SSR 06-03p (eff. Aug. 9, 2006).[5] In adopting SSR 06-03p, the Commissioner acknowledged that with the growth of managed health care in recent years, nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. SSR 06-03p. The Commissioner recognized that opinions from other medical sources, such as nurse practitioners and therapists, "are important and should be evaluated on key issues such as impairment severity and functional effects,

---

[5] *See* SSR 06-03p, 2006 WL 2329939 (S.S.A.); 71 FR 45593-03, 2006 WL 2263437 (F.R.) (Aug. 9, 2006).

10

along with other relevant evidence in the file." *Id.* SSR 06-03p requires an ALJ to consider the opinions expressed by these "other" medical sources:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

*Id.*

Here, the ALJ's decision did not consider the opinions of Ms. Mansfield and NP Herring as required under SSR 06-03p. Rather, the ALJ summarily rejected their opinions. This was an error. *See Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540-42, n. 2 (6th Cir. 2007) (noting that "[f]ollowing SSR 06-03P, the ALJ should have discussed the factors relating to his treatment of [the nurse practitioner's] assessment, so as to have provided some basis for why he was rejecting the opinion"); *Watson v. Commissioner*, No. 5:06-cv-153, 2007 WL 4557859 (W.D. Mich. Dec. 20, 2007) (ALJ's decision reversed and remanded, where the ALJ failed to evaluate the nurse practitioner's treatment and opinions pursuant to SSR 06-03p). Accordingly, this matter should be reversed and remanded pursuant for sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should evaluate the opinions of Ms. Mansfield and NP Herring consistent with the requirements of SSR 06-03p.

### C. Dr. Turner's 2006 letter to the Appeals Council

As stated above, NP Herring completed plaintiff's mental RFC assessment. In her brief, plaintiff explains that Dr. Turner was on vacation at the time that the RFC assessment was requested. Plaintiff's Brief at 7. In December 2006, approximately three months after the ALJ denied plaintiff's claim, her counsel submitted a letter from Dr. Turner to the Appeals Council, in which the doctor agreed with NP Herring's conclusions:

> I fully agree with the diagnoses and treatment given [plaintiff]. The Nurse Practitioner Ellen Herring functions independently and works under guidelines imposed by the clinic and doctors. Her assessments and treatment are fully supported by the medical staff at this clinic.

(AR 378). The doctor further stated that plaintiff did not have insurance for medications, was given samples, that she had "spoken" of suicide in the past "without a plan to commit," and that she received undocumented free treatment at the clinic (AR 378).

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. *Id.* The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute. "The court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new

evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g) (emphasis added).

Plaintiff has not requested a sentence-six remand to present Dr. Turner's additional evidence to the ALJ.  Even if plaintiff had made such a request, she has failed to demonstrate good cause for failing to incorporate Dr. Turner's letter into the record.  NP Herring issued the mental RFC assessment on July 30, 2006, several days before plaintiff's hearing on August 9th.  Plaintiff neither requested an extension of time to submit a letter from Dr. Turner, nor attempted to submit such a letter prior to the issuance of the ALJ's decision on September 6th.  Rather, it was only after the ALJ denied benefits, in part due to lack of evidence from a medical doctor, that plaintiff obtained a letter from Dr. Turner and submitted it to the Appeals Council in an effort to overturn the ALJ's decision.  The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.  *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process); *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986) ("good cause" is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability").  Accordingly, a sentence-six remand is not warranted in this matter.

**IV.   Recommendation**

For these reasons, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for consideration of the opinions expressed by Ms. Mansfield and NP Herring.[6]


Dated:  July 3, 2008                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6] On remand, the Commissioner will presumably not consider the new evidence provided by Dr. Turner. Sentence four remands are distinct from sentence six remands, with each remand serving a different purpose.  *See Melkonyan*, 501 U.S. at 99-100 ("Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision, but only if the claimant shows good cause for failing to present the evidence earlier.") While it is possible to issue a "dual basis remand" under both sentence four and sentence six, *see, e.g., Jackson v. Chater*, 99 F.3d 1086, 1090 (11th Cir. 1996), plaintiff has failed to demonstrate a separate basis for a sentence six remand in this case.